IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CAROLYN SOWERS,**

    **Plaintiff,**

v.                                   Case No. 2:06-CV-230
                                        JUDGE EDMUND A. SARGUS, JR.
                                        Magistrate Judge Kemp

**SUN HEALTHCARE GROUP, INC.**

    **Defendant.**

## OPINION AND ORDER

This matter is before the Court for consideration of the Plaintiff's Motion for Judgment on the Administrative Record (Doc. #24) and the Defendant's Motion for Judgment on the Administrative Record (Doc. #25). For the reasons that follow, Plaintiff's motion is GRANTED and Defendant's motion is DENIED.

**I.**

Plaintiff, Carolyn Sowers, brings this action seeking medical benefits under the Employee Retirement Security Act of 1974 ["ERISA"], 29 U.S.C. § 1001, *et seq.* Defendant Sun Healthcare Group, Inc. is Plaintiff's former employer. Sun is also the administrator of a self-funded exclusive provider healthcare Plan (the "Plan"), in which Plaintiff participated. Sun delegated claims administration to Cigna Healthcare; Sun was solely responsible for all benefit payments and ultimately responsible for all benefits decisions. There is no dispute that the Plan is subject to ERISA, and that Sun is the proper Defendant. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

Plaintiff is approximately five feet seven inches tall and, during the time relevant to this case, weighed between 301 and 376 pounds. (Admin. R. [hereinafter "AR"] at 220). From November, 2001 until January 2004, her Body Mass Index ("BMI") remained above 47%. (Id.)

On April 29, 2003, Plaintiff's general practitioner, Dr. Schlie, requested pre-authorization on behalf of Plaintiff for coverage of gastric bypass surgery, a procedure intended to treat morbid obesity. On June 3, 2003, Cigna denied Plaintiff's request, finding that the procedure was not medically necessary as defined by the Plan. Cigna's letter stated:

> Services or supplies for the purpose of weight reduction, including but not limited to gastric surgery . . . are not covered under you (sic) Healthplan unless medically necessary. Bariatric surgery is generally considered to be medically necessary when there has been a Body Mass Index (BMI) greater than 40 for at least one year; or a BMI between 35 to 40 with additional documentation of one or more clinically significant co-morbidities that have failed to respond adequately to non surgical treatment methods including appropriate and adequate medication. In addition, medical record documentation must be provided of active participation and reasonable compliance with at least 2 professionally supervised weight loss programs for a minimum of 6 months in each program with one of the programs completed within the preceding 12 months. Finally there must be documentation of a thorough evaluation by a multidisciplinary team. The evaluation should include Psychiatric history, diagnoses, and clearance for surgery.
>
> We have determined that the requested services do not meet the definition of medical necessity found in your benefit plan.

(AR at 169).

The Summary Plan Description ("SPD") contained in the administrative record excludes coverage for "medical and surgical services intended primarily for the treatment or control of obesity, which are not medically necessary." (AR at 31). Cigna's letter denying Plaintiff's claim relies on a Clinical Resource Tool ("CRT"), defining the conditions of medical necessity for bariatric surgery. There are two such CRT's in the administrative record, both entitled "Bariatric Surgery for Clinically Severe (Morbid) Obesity." (Id. at 154 and 172). Both versions have the

2

same effective date (1/1/2001), and both list "common indications for bariatric surgery" although the indicators listed are not identical.

Cigna's initial letter denying Plaintiff's request for coverage does not identify which version of the CRT it relied upon; it states, however, that she was required to participate in two professionally-supervised weight loss plans which is an indicator found in one of the CRTs. (Id. at 154). The other version of the CRT requires participation in just one professionally-supervised plan. (Id. at 172).

The claim denial letter also explains Plaintiff's right to appeal the decision within one year, her right to a second level of review by the Appeals Committee, and her "right to bring legal action under section 502(a) of ERISA following our review." The language in the letter differs significantly than that in the SPD, which provides for one appeal to be made, in writing, within 180 days. (Id. at 78). The SPD further states: "If your appeal is denied, the denial notice will contain the following information: the specific reasons for the appeal determination . . . a statement describing any *voluntary* appeal procedures offered by the plan . . . a statement describing your right to bring a civil lawsuit under federal law." (Id. at 79) (emphasis added).

After Plaintiff's claim was denied, the record reflects that Dr. Schlie contacted Cigna. According to his note he:

> spoke with the medical director to get an understanding of what is, in fact, required by that carrier in order for her to potentially qualify for bariatric surgery. He indicated that she must be involved in an ongoing weight loss program for 6 months and that she must have a psychological evaluation prior to that surgery and that both requirements must be met before the carrier would consider covering her.

(Id. at 197, Physical Exam and Progress Record from 8/27/03 office visit). Dr. Schlie's notes also describe his conversation with the medical director, Dr. Ober as follows:

3

> [he] did clarify the question indicating that the concern is that there be clear evidence that the patient did embark on an organized weight loss effort. Also, that there is psychiatric evaluation to rule out the possibility of an eating disorder. . . . The doctor did indicate that we could actually supervise a weight loss program as long as she return on at least a monthly basis and was weighed in each month and that we address that problem as a primary problem.

(Id. at 198, Physical Exam and Progress Record, Dr. Schlie note dated August 20, 2003). Dr. Schlie's progress notes for Plaintiff from August, 2003 through January, 2004 reflect his supervision of Plaintiff's participation in a reduced-calorie diet, including monthly visits and weigh-ins. (Id. at 195-198, 191). Plaintiff also underwent a psychiatric evaluation on December 18, 2003, after which Dr. Kao, the evaluating physician, concluded: "I do not see any psychiatric contraindication for her to have this surgery. I think the surgery may help her mood. She is psychiatrically clear to undergo this surgery." (Id. at 187-88).

On January 20, 2004, Dr. Schlie appealed Cigna's denial on behalf of Plaintiff, and submitted medical records showing her medications, her BMI from November 28, 2001 through January 2, 2004, her participation in a physician-supervised weight loss program, and her psychiatric evaluation. (Id. at 184- 200). The record reflects that this information was resent to Cigna from Elizabeth Whitt, LPN, on behalf of Dr. Schlie, on February 9, 2004. Cigna's internal notes reflect receipt of medical records from Dr. Schlie both in May, 2003, and on February 9, 2004. (Id. at 226, Appeal Decision Template, and 165). Cigna denied Plaintiff's appeal by letter dated February 10, 2004, which explained the decision as follows:

> The clinical information provided does not justify the medical necessity for a bariatric operative procedure. The patient's height and BMI have not been provided[.] The following information is necessary. 1. Recent history and documentation submitted as evidence of active participation and reasonable compliance with at least one (1) physician-directed weight loss program. . . , documented by a physician who does not perform weight loss surgery, for a minimum of six (6) months . . .

4

(Id. at 227). The appeal denial letter states that Plaintiff "may request a second level appeal review within one year from the date on this letter." (Id.)

Following the denial of her appeal, Plaintiff was evaluated by a multidisciplinary group of doctors at the Ohio State University Medical Center's Bariatric Surgery Program. On behalf of Plaintiff, the Director of Bariatric Surgery, Dr. Needleman, submitted a letter and additional records to Cigna on October 11, 2004. (Id. at 213). Dr. Needleman's letter states that Plaintiff is "an appropriate candidate for Roux-en-Y gastric bypass" and emphasizes that "this surgery is *not* cosmetic surgery, but rather life saving surgery." (Id. at 233).

Because the material from Ohio State was not specifically directed to the Appeals Unit, Cigna did not treat it as an appeal, but rather as a new pre-authorization request. The claim was denied because the Plan no longer covered surgical treatment of obesity under any circumstances. (Id. at 258).

Following several unsuccessful attempts by her attorney to reopen the matter with Cigna in 2005, Plaintiff filed a lawsuit on March 24, 2006, seeking benefits under Section 502(a)(1)(B) of ERISA, 29 U.S.C. 1132(a)(1)(B).

## II.

Both Plaintiff and Defendant move for Judgment on the Administrative Record. Because the Plan gives discretionary authority to Sun to determine benefits and construe the terms of the plan, the standard of review in this Court is whether the benefits decision was arbitrary and capricious. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101 (1989).

The relevant provision of the Plan states:

The plan administrator, Sun Healthcare Group, is a fiduciary for all aspects of the plan,

5

> and exercises discretionary authority and control over the administration of the plan and the management and disposition of plan assets. As the plan administrator, Sun Healthcare Group shall have the discretionary authority to determine eligibility for plan benefits subject to its right to delegate is responsibility to third party service providers.

(AR at 142).

The arbitrary and capricious standard of review requires the Court to uphold a benefit determination if it is "rational in light of the plan's provisions." *Gismondi v. United Technologies Corp.*, 408 F.3d 295, 298 (6th Cir. 2005), quoting *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996). "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Id.*, quoting *Davis v. Kentucky Finance Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989). The Court must accept a Plan Administrator's rational interpretation of the plan "even in the face of an equally rational interpretation offered by the participants." *Gismondi*, 408 F.3d at 298, citing *Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004).

In *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2351 (2008), the Supreme Court held that "the fact that a plan administrator both evaluates claims for benefits and pays benefits claims creates the kind of 'conflict of interest' to which *Firestone*'s fourth principle refers." Without specifying a framework for analysis of the conflict of interest, the Court held: "we believe that *Firestone* means what the word "factor" implies, namely, that when judges review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of interest is one." *Id.* Because Sun Healthcare both funds and administers the group plan in this case, the Court must consider that conflict of interest as a factor in reviewing its decision under the arbitrary and capricious standard.

6

### III.

The Court finds, based upon its review of the administrative record as a whole, that Defendant acted in an arbitrary and capricious manner, inconsistent with the express terms of the Plan and without rational explanation.

**A.     Defendant's denial of Plaintiff's appeal was arbitrary and capricious.**

**1.     Plaintiff submitted evidence of medical necessity.**

As set out above, Defendant denied Plaintiff's initial claim for coverage based on her failure to provide sufficient information about her weight loss efforts, her BMI, and her psychiatric evaluation. Defendant claimed that additional medical information was necessary to establish that the procedure requested was medically necessary.

In her timely appeal of the denial, Plaintiff's physician provided the information requested in the denial letter and by Cigna's medical director, required by the Plan, and compliant with the CRT's indicators of "medical necessity," within the 365-day appeal period. Yet Defendant denied Plaintiff's appeal, stating again that Plaintiff had not provided evidence of medical necessity.

The statement in Cigna's letter of February 10, 2004, that "the patient's height and BMI have not been provided" is proved false by the administrative record, which shows that this information was sent to Cigna by Dr. Schlie at least once, if not twice, before February 10. Cigna's internal claims notes reflect that this information was received on February 9, 2004, a date that corresponds to Dr. Schlie's faxing Plaintiff's BMI chart and notes from her office visits to Cigna. Likewise, Cigna's claim that Plaintiff had not provided "evidence of active participation and reasonable compliance with at least one (1) physician-directed weight loss program (including monthly weigh-ins, nutritional analysis, education and at least monthly

7

clinical encounters with a health professional), documented by a physician who does not perform weight loss surgery, for a minimum of six (6) months and completed within the past 5 years" suggests that Cigna did not even look at the records provided by Dr. Schlie before denying Plaintiff's appeal.

Defendant's reliance on two different CRT's, without acknowledging the fact, is just one example of the arbitrary and capricious nature of Defendant's decision. Defendant's ignorance or disregard of the medical records provided by Dr. Schlie is inexcusable and unreasonable in light of the Plan's provisions. A footnote in Defendant's motion concedes that Plaintiff's BMI record had been provided, and states "it is unclear why this information was deemed insufficient by Cigna." (Def.'s Mot. at fn 4). Nothing in the administrative record contradicts the medical evidence establishing that Plaintiff met the indicators of medical necessity for bariatric surgery. Rather, it is clear from the administrative record that the definition of "medical necessity" was a moving target.

Defendant has not offered a "reasoned explanation, based on the evidence, for [this] particular outcome" and its denial of Plaintiff's appeal was arbitrary and capricious. *See Davis*, 887 F.2d at 693.

**2. Plaintiff properly submitted additional medical records in support of her administrative appeal.**

Defendant contends that, because Plaintiff could not prove medical necessity on the date she first requested coverage for bariatric surgery, "there was nothing Plaintiff could do to cure the deficiencies in Dr. Schlie's request." (Def.'s Mem. In Opp. at 6). This statement contradicts Defendants representations to Plaintiff and her physicians, the Plan language, and the very

8

purpose of an administrative review process.[1]

In the ERISA context, an appeal of the denial of benefits is routinely supported by new information gathered between the time of the denial and the appeal both by the claimant and the plan administrator. *See, e.g., Plummer v. Hartford Life Ins. Co.,* 2007 U.S. Dist. LEXIS 488 (S.D. Ohio Jan. 5, 2007) (Review of benefits determination included new medical information submitted by both plaintiff and defendant plan administrator.). In *Williams v. International Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000), the claimant had been denied disability benefits under a group plan sponsored by his employer. In support of his appeal of the administrator's decision, the claimant submitted additional medical evidence consisting of two doctors' letters related to claimant's disability. The letters were created more than two years after the employer initially denied the claim and described the claimant's current, disabled condition. The plan administrator refused to consider the letters, asserting that the claimant's physical condition had changed since the claim was initially denied such that evidence related to his current condition was not relevant to a review of the original decision. The Court disagreed, reversing the decision of the district court, and holding that "the Plan Administrator acted arbitrarily and capriciously in failing to consider the additional medical evidence." *See also Schreibeis v. Ret. Plan for Emples. of Duquesne Light Co.*, 2005 U.S. Dist. LEXIS 33236 (W.D. Pa. Dec. 15, 2005) (plan administrator acted in arbitrary and capricious manner by denying claimant's appeal before receiving supplemental information from her physician); *Palmiotti v. Metro. Life Ins. Co.*, 423 F. Supp. 2d

---

[1] The statement also contradicts Defendant's position in its own Motion, wherein it claims that after her appeal had been denied based on her supposed failure to provide the appropriate medical information, "Plaintiff clearly had the opportunity to contact Cigna to discuss the decision and/or to appeal it." (Def's Mot. at fn 6).

9

288, 300 (S.D.N.Y. 2006) (MetLife's decision denying LTD appeal was arbitrary and capricious where claimant "was not given an opportunity to supplement his appeal with neurological testing, stress quantification, and evidence of fatigue and other data acceptable to MetLife.").

Defendant's SPD allows for written appeals to be supported by "any other relevant information (e.g. written comments, documents, articles or records)," without temporal restriction. (AR at 78). There is no evidence in the record that Defendant told Plaintiff or her physician that her appeal was limited to information already existing at the time of her initial request, and Defendant did not state that it was denying Plaintiff's appeal on the grounds that the medical records were created after the initial denial. Instead, the denial letter again states that Plaintiff had not provided information sufficient to prove that surgery was medically necessary. The steps Plaintiff took to prepare for the appeal were those identified by Cigna as required to prove medical necessity. The medical records show that Plaintiff's condition did not change significantly between her initial request and her appeal; she simply took additional steps to document her condition, as required by the Plan and requested by Defendant.

Defendant's failure to consider the medical evidence of medical necessity submitted by Plaintiff was unreasonable in light of the Plan's provisions, and its decision to deny coverage was arbitrary and capricious.

**B.      Plaintiff exhausted her administrative remedies.**

As a threshold matter, Defendant contends that Plaintiff's claims are barred because she failed to pursue a second level administrative appeal in a timely fashion. The Court finds that Plaintiff complied with the mandatory claims review process and that any additional appeals would have been futile, as evidenced by the Defendant's own conduct and statements.

10

The SPD contained in the administrative record contains procedures for only one level of appeal, and specifically states that any further appeals are *voluntary*. Defendant's Motion does not cite to any Plan language purporting to require two levels of appeal, and nothing in the administrative record supports the position that a second appeal is mandatory. There is no dispute that Plaintiff filed a timely appeal of Defendant's decision denying coverage for her surgery. Defendant's argument that Plaintiff's claim is barred for failure to exhaust her administrative remedies by filing a second, voluntary appeal is without merit.[2]

As set out above, Defendant asserts that "there was nothing Plaintiff could do to cure the deficiencies in Dr. Schlie's request." (Def.'s Mem. in Opp. at 6). Therefore *any* appeal was, by Defendant's own admission, futile. The futility exception to exhaustion was explained by the Sixth Circuit Court of Appeals in *Fallick v. Nationwide Mut. Ins. Co.*

> Although ERISA's administrative exhaustion requirement for claims brought under § 502 is applied as a matter of judicial discretion, a court is obliged to exercise its discretion to excuse nonexhaustion where resorting to the plan's administrative procedure would simply be futile or the remedy inadequate. *See Costantino v. TRW Inc.*, 13 F.3d 969 (6th Cir. 1994).
>
> The standard for adjudging the futility of resorting to the administrative remedies provided by a plan is whether a clear and positive indication of futility can be made. *See, e.g., Davis v. Featherstone*, 97 F.3d 734, 737 (4th Cir. 1996); *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir. 1996). A plaintiff must show that "it is certain that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision." *Lindemann*, 79 F.3d at 650.

---

[2] Because the Court finds that only one appeal was required by the terms of the Plan, it does not need to reach factual issue of whether Dr. Needleman's submission of information regarding Plaintiff's evaluation by the Ohio State Bariatric Surgery Program constituted a second-level review. Since Cigna requested additional information in the letter denying Plaintiff's appeal, however, it seems reasonable that when Plaintiff provided the additional medical information, within the appeal period, Cigna could reasonably have considered such as an appeal. Instead, Defendant elevates form over substance, complaining that Dr. Needleman did not address the fax to the correct department.

11

162 F.3d 410, 419 (6th Cir. 1998) (internal citations omitted). Here, where the Plan administrator acknowledges that nothing Plaintiff could have done or submitted during the appeal process would have changed the initial denial of coverage, it is certain that any appeal would have been denied. *See Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 250 (3d Cir. 2002) ("Whether to excuse exhaustion on futility grounds rests upon weighing several factors, including . . . testimony of plan administrators that any administrative appeal was futile.") For this additional reason, Plaintiff's claim for benefits is not barred.

## IV.

Although in some cases the proper remedy for a plan administrator's arbitrary and capricious decision is to remand the case, where there are no factual determinations remaining, the Court may properly grant benefits to the plan participant. *Williams*, 227 F.3d at 716. In *Williams*, the Court of Appeals retroactively awarded disability benefits where "the Plan Administrator's selective review of Plaintiff's additional medical evidence was an unreasonable basis to deny Williams' disability benefits, and remand is not necessary" and would be "futile." *Id., citing Govindarajan v. FMC Corp.*, 932 F.2d 634, 637 (7th Cir. 1991) (where the review of the medical evidence was arbitrary and capricious or unreasonable, the proper remedy is to retroactively grant benefits without a remand); *Quinn v. Blue Cross and Blue Shield Ass'n*, 161 F.3d 472, 477 (7th Cir. 1998); *Grossmuller v. International Union, United Auto., Aerospace & Agric. Implement Workers of Am., UAW*, 715 F.2d 853, 858-59 (3d Cir. 1983). The Court of Appeals in *Williams* distinguished *University Hospitals of Cleveland v. Emerson Electric Co.*, 202 F.3d 839, 841 (6th Cir. 2000), wherein the plan administrator never had an opportunity to review the evidence in question, and remanding the case for further development of the record and review of the facts

12

was appropriate.

Plaintiff submitted to Defendant, prior to initiation of this action, sufficient medical evidence to establish that she satisfies the CRT's indicators of medical necessity for bariatric surgery. There is no contrary medical evidence in the record creating an issue of fact as to whether Plaintiff is an appropriate candidate for the surgery. Instead, all of the medical evidence in the administrative record establishes that Plaintiff meets or exceeds every criteria identified by Defendant to qualify for bariatric surgery coverage under the terms of the Plan.[3]

As there are no factual determinations to be made, the proper course of relief is to retroactively grant benefits to Plaintiff under the terms of the Plan. *See Godfrey v. Bellsouth Telecomms. Inc.*, 89 F.3d 755, 760-61 (11th Cir. 1996) (holding that retroactive benefits was the proper remedy where district court found, based on the record, that claimant was disabled).

**C.     Attorney's fees and costs.**

If Plaintiff seeks attorney's fees under 29 U.S.C. 1132(g)(1), she shall file her motion for such fees and a memorandum setting out the "reasonable attorney's fee and costs" incurred, within 15 days of the date of this Order.

---

[3] Footnote 2 in Defendant's Memorandum in Opposition states that "Cigna also determined that the Plan would not cover the surgery because Dr. Schlie sought to perform it at a surgical center outside the Cigna network." This misrepresentation of the record does not create a factual determination such that remand is required. Cigna's notes actually reflect that after being told that Bariatric Treatment Center of Ohio was out of network, Dr. Schlie's office would refer Plaintiff to an in-network provider. It even appears that Cigna recommended Ohio State, a recommendation that Plaintiff acted on. (AR at 163, 166). Regardless, Cigna never communicated the out-of-network exclusion as a reason for denying Plaintiff's claim; to do so now is a violation of ERISA. *See* 29 U.S.C. § 1133; 29 C.F.R. 2560.503-1(f) (describing the procedures for denying a claim, and requiring that "the specific reason or reasons for the denial" be provided).

13

## V.

Considering the administrative record as a whole, this Court finds that Plaintiff has established her entitlement to insurance coverage for bariatric surgery under the terms of the Plan, and that Defendant's conclusion to the contrary was arbitrary and capricious. The Court hereby ORDERS that Defendant provide coverage to Plaintiff in accordance with the Plan in effect as of April 29, 2003.

Plaintiff's Motion for Judgment on the Administrative Record (Doc. #24) is **GRANTED**. Defendant's Motion for Judgment on the Administrative Record (Doc. #25) is **DENIED**. The Clerk is **DIRECTED** to enter Judgment in favor of Plaintiff and to dismiss this case.

**IT IS SO ORDERED.**

8-8-2008
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**